## Theresa Hickey, Appellee, v. Springfield Coal Mining Company, Appellant.

MINES AND MINERS ACT—*what essential to recovery for wilful violation.* In order to recover under the Mines and Miners Act for wilful violation, not only must a wilful violation be shown but it must be made to appear that the injury or death in question proximately resulted from such wilful violation.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the November term, 1908. Reversed with finding of fact. Opinion filed May 19, 1909.

CONKLING & IRWIN and J. C. & W. B. McBRIDE, for appellant.

ALBERT SALZENSTEIN and S. H. CUMMINGS, for appellee.

MR. JUSTICE BAUME delivered the opinion of the court.

Appellee recovered a verdict and judgment against

appellant in the Circuit Court of Sangamon county for $800, as damages occasioned by the death of her husband, Michael Hickey, who is alleged to have been killed by reason of the wilful failure of appellant to comply with the provisions of clause "a" of section 28 of the Mines and Miners Act, whereby at every shaft operated by steam power the operator is required to station at the top and bottom of such shaft a competent man charged with the duty of attending to signals, preserving order and enforcing the rules governing the carriage of men on cages, said top and bottom man to be at their respective posts of duty at least a half hour before the hoisting of coal begins in the morning, and remain for half an hour after hoisting ceases for the day.

The uncontroverted facts in this case as disclosed by the evidence are substantially as follows: On August 28, 1906, the mine of appellant was not being regularly operated in mining and hoisting coal, but several men were engaged during the day in doing necessary repair work, cleaning, sprinkling the roads, and retimbering the passageway at the bottom of the mine, which was used by the men and mules in going around the shaft from one side of the mine to the other. In the forenoon of that day the deceased had been engaged in retimbering such passageway and during that time the cage was swung in the shaft, where it remained stationary until about 3:30 P. M. In the afternoon the deceased was ordered by the superintendent to assist one Hall in cleaning up a fall in an entry, and was engaged at that work until shortly after 3 o'clock, when he returned to the bottom accompanied by Hall. When they reached the bottom on the west side of the shaft, the deceased, who had some oil in a bottle which he desired to put in another bottle which was on the east side of the shaft, walked directly into the cage seat in the north division of the shaft for the purpose of going through to the east side, and as he stepped into such cage seat he was

struck by a descending car then about a foot above his head, and so seriously injured that he died within two or three days thereafter.

At the time the deceased was injured no one was stationed at the bottom of the shaft charged with the duty of attending to signals, preserving order and enforcing the rules governing the carriage of men on cages, as required by the statute. The bell which communicated the required signals for raising, lowering or stopping the cages was located in the center of the shaft and was operated by two levers, one on the west side and one on the east side of the shaft. As the deceased stepped into the cage seat Hall cried out, "Look out, Mike, the cage is there," and immediately thereafter the lever on the east side of the shaft was operated by one Peorda, who happened to be near the lever at the time. After striking the deceased the cage descended from three to four feet, when it was stopped. Hall and Smith, the latter being the superintendent of the mine and the brother-in-law of the deceased, both of whom saw the deceased walk into the cage seat and who were thoroughly familiar with the situation, the proximity of the descending cage to the deceased and the manner in which the signals were communicated, were the only persons called as witnesses on behalf of appellee. They both testified that from the time the deceased stepped into the cage seat until he was struck by the descending cage there was not sufficient time for a person stationed there charged with the duty of attending to signals, to have given the necessary signal by ringing the bell, to have stopped the cage before it struck the deceased.

It is urged on behalf of appellant that the statute properly construed only provides for stationing a bottom man charged with the performance of the required duties when coal is to be hoisted, and that such bottom man is not thereby required to be at the bottom of the mine for half an hour before the men go down in the morning and to remain for half an hour after they are hoisted out in the evening on days when no

coal is being hoisted; and that as no coal was being hoisted during the day on which the deceased was injured appellant was not required to have a bottom man so stationed. In the view we take of the case we deem it unnecessary to determine this question.

It is incumbent upon appellee to show not only a wilful failure by appellant to comply with the statute requiring a competent bottom man to be stationed in the mine, but also that such wilful failure was the proximate cause of the death of her intestate.

The wilful failure of appellant in the respect charged was not the proximate cause of the injury which occasioned the death of appellee's intestate, because it appears from the undisputed evidence that the injury would have been inflicted even though appellant had fully complied with the statute by having a bottom man to attend signals stationed in the mine when the deceased stepped into the cage seat. If a competent bottom man had been stationed in the mine on the west side of the shaft, at which the deceased entered, he could not have prevented the deceased from stepping into the cage seat except by a warning addressed to the deceased personally, or by physical force, and if the bottom man had been on the east side of the shaft, as he properly might have been in the performance of his duties, he could not have given a stop signal in time to have prevented the accident.

The finding, therefore, that the wilful failure of appellant as alleged was the proximate cause of the injury complained of, was based upon pure conjecture unsupported by any substantive proof.

The judgment of the Circuit Court will be reversed with a finding of fact to be incorporated in the judgment of this court.

*Reversed with finding of fact.*

Finding of fact: We find that the wilful failure of appellant as alleged in the declaration was not the proximate cause of the injury which resulted in the death of appellee's intestate.